HEATHER E. WILLIAMS, SBN 122664
Federal Defender
MIA CRAGER, SBN 300172
MEGHAN McLOUGHLIN, SBN 354051
Assistant Federal Defenders
801 I Street, Third Floor
Sacramento, California 95814
T: (916) 498-5700
F: (916) 498-5710

Attorneys for Defendant
ROBERT POOLEY

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:21-CR-111-WBS |
| Plaintiff, | **FORMAL OBJECTIONS TO PRE-SENTENCE INVESTIGATION REPORT** |
| vs. | Date: September 30, 2024 |
| ROBERT POOLEY, | Time: 10:00 A.M. |
| Defendant. | Judge: Hon. William B. Shubb |

I.     ARGUMENT

**A. The fraud offense did not "involve a conscious or reckless risk of death or serious bodily injury."**

The probation officer increased Mr. Pooley's offense level by 5 levels on the basis that "the offense involved [] the conscious or reckless risk of death or serious bodily injury." PSR ¶ 41; U.S.S.G. § 2B1.1(b)(16). The probation officer reasoned that the fraud offense "caused students to believe they completed all required training and were certified tandem instructors." PSR ¶ 41.

But conducting a tandem jump without a valid "tandem instructor rating" card does not inherently risk death; it is just against the rules of a private non-profit association (the USPA). And the way that Mr. Pooley violated the USPA's rules – namely, teaching a course that he was suspended from teaching – was not inherently dangerous. His suspension had nothing to do with

the quality of the training he provided. Instead, his suspension was due to his "repeated failure to properly document [his] actions." PSR ¶ 13. Specifically, the Parachute Association suspended him for failing to "properly complete the paperwork" and for signing a rating-renewal form for a tandem instructor without verifying that the person had a valid FAA medical at that time. *Id.* Thus, the suspension did not relate to any issue with the quality of Mr. Pooley's training or the quality of his emergency procedures training in particular.[1]

Where courts have applied subsection (b)(16) because "the offense involved the conscious or reckless risk of death or serious bodily injury," the risk of harm was integral to the fraud scheme itself. *See, e.g.*, *United States v. Rainford*, 110 F.4th 455, 487 (2d Cir. 2024) (defrauding insurance companies by staging slip-and-fall accidents); *United States v. Jean*, 647 F. App'x 1, 3 (2d Cir. Apr. 22, 2016) (staging car accidents and fabricating personal-injury claims); *United States v. Johansson*, 249 F.3d 848, 859–61 (9th Cir. 2001) (falsifying driving logs and paying commercial truck drivers carrying hazardous materials to drive longer hours); *United States v. Laughlin*, 26 F.3d 1523, 1530–31 (10th Cir. 1994) (performing unnecessary and sometimes harmful surgical procedures in order to double-bill medical insurance). In those cases, the fraud involved inflicting physical harm in order to obtain money. In contrast, a risk of harm that is merely a downstream consequence of the defendant's actions is "too attenuated" and

---

[1] Paragraph 31 of the PSR recounts an FAA investigator's conclusion that Mr. Pooley did not provide emergency procedure training to Mr. Kwon. However, trial testimony indicated that Mr. Pooley did indeed provide emergency training in Mr. Kwon's course and his other courses. *See* Testimony of Brad North, Transcript of May 17, 2024 at 140-141 (describing course taught by Rob Pooley including that "we would practice -- we -- one or two of us, I believe, demonstrated emergency procedures, which basically involves pretending that you're pulling various handles to operate various parts of the system. After that, we demonstrated our understanding of adjusted -- don and adjusted the UPT tandem rig to our bodies, because they are adjustable so they fit properly. From there, it went towards harnessing up a student, which would be one of the other people - - we harnessed each other up as tandem instructor candidates to practice adjusting a passenger harness to various body shapes and sizes"); Testimony of Fabian Munoz, Transcript of May 17, 2024 at 41:23-42:12 ("Q. And was Mr. Pooley teaching the course to you?; A. That's right.; Q. What was he teaching you? A. He taught me -- we work on the theory portion using the USPA manual.; . . . Q. And what about -- what were you talking about in the manual? What, specifically, were you discussing?; A. Security, emergency procedures, the procedures regarding the plane, and possible complications in the air.; Q. How many days was this theory part of the course?; A. Around three days.; Q. Okay. And did Mr. Pooley teach you all three days?; A. That's right.").

the enhancement does not apply. *See United States v. Holmes*, 2023 WL 149108, at *10 (N.D. Cal. Jan. 10, 2023) (finding risk of death/injury "too attenuated" from conspiracy to defraud investors, even though the defendant's misrepresentations included falsely and "publicly touting the capabilities and accuracy" of her faulty medical products).

Here, the fraud scheme had nothing to do with the quality of the training the candidates received. The fraud scheme involved falsely promising potential tandem instructor candidates that his course would qualify them for USPA "tandem instructor ratings." *See, e.g.*, PSR ¶ 22 ("Palomino told agents he felt defrauded by Pooley because he promised a rating that he (Pooley) could not provide."). In other words, the fraud was about what the candidates could get when the training was over; it was not about the quality of the training itself. Mr. Pooley had been teaching this same course since 2010. The quality of Mr. Pooley's training was the same in the years before the fraud as it was during the fraud. This was not an "offense [that] involved" the conscious or reckless risk of death or serious bodily injury and subsection (b)(16) therefore should not apply.

### B. The defense requests a restitution hearing.

The defense objects to the restitution amount and requests a hearing at a date following sentencing.

## II. CONCLUSION

The defense requests that the Court strike the 5-level increase at PSR ¶ 41. The total offense level should be 11 and the guidelines range should be 8-14 months.

Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender

Date: September 9, 2024

*/s/ Mia Crager*
MIA CRAGER
MEGHAN McLOUGHLIN
Assistant Federal Defenders
Attorneys for Defendant
ROBERT POOLEY